1  CHARLES L. POST, STATE BAR NO. 160443
2  JOSH H. ESCOVEDO, STATE BAR NO. 284506
   **weintraub tobin** chediak coleman grodin
3  400 Capitol Mall, Suite 1100
   Sacramento, CA  95814
4  Telephone:       (916) 558-6000
   Fax:              (916) 446-1611
5
6  PAUL HASTINGS LLP
   ROBERT M. MASTERS (*Pro Hac Vice* Application Pending)
7  875 15th Street, N.W.
   Washington, DC  20005
8  Telephone:  1(202) 551-1700
   Facsimile:  1(202) 551-1705
9
   Attorneys for Plaintiff
10 CESCA THERAPEUTICS INC.

11

12                    UNITED STATE DISTRICT COURT

13                    EASTERN DISTRICT OF CALIFORNIA

14

15

16 CESCA THERAPEUTICS INC.,            CASE NO.

17              Plaintiff,             **COMPLAINT FOR:**

18      vs.
                                        **1. BREACH OF CONTRACT**
19 SYNGEN INC., a California corporation, **2. SPECIFIC PERFORMANCE OF**
   PHC MEDICAL, INC., a California        **CONTRACT**
20 corporation, PHILIP COELHO, an        **3. DECLARATORY RELIEF**
   individual, TERRENCE WOLF, an         **4. MISAPPROPRIATION OF TRADE**
21 individual, PRINCE EMMANUEL, an       **SECRETS**
   individual, and DOES 1 through 10,    **5. CONVERSION**
22 inclusive,                            **6. UNFAIR COMPETITION**
                                         **7. DECLARATORY RELIEF**
23              Defendants.             **8. UNJUST ENRICHMENT**
                                         **9. CONSTRUCTIVE TRUST**
24                                      **10. INJUNCTIVE RELIEF**
                                         **11. RELIEF BASED ON RESCISSION**
25                                      **AND DEMAND FOR JURY TRIAL**

26

27

28

{1796794.DOCX;}

COMPLAINT

Plaintiff, Cesca Therapeutics Inc. ("Cesca"), by its attorneys, for its Complaint herein alleges:

## SUMMARY OF ACTION

1.     Defendant, Philip Coelho, is the former founder, chief executive officer, and chief technology architect of ThermoGenesis Corp ("ThermoGenesis"), now known as Cesca Therapeutics, Inc. ("Cesca").  Later, as President of Defendant, PHC Medical, he was retained as a consultant under contract by Cesca.  Subsequent to his relationship with Cesca, Philip Coelho founded Defendant, SynGen.  Defendants, Terrence Wolf and Prince Emmanuel, were hired and employed by Cesca, and were later employed by SynGen.  Collectively, while at Cesca, each of the Defendants other than SynGen was actively involved in the research, design, and development of products, product improvements, and inventions and ideas for Cesca.  They were required to keep information relating to those products, improvements, and inventions confidential.  They were also required to assign any inventions, innovations and ideas and designs they developed during the course of their employment to Cesca.  They, and other Cesca employees, ultimately developed inventions, ideas and designs relating to a new version of a then current Cesca product, the AXP® System.  However, instead of assigning their inventions, ideas and designs to Cesca, Defendants took the information—which Cesca had taken considerable measures to keep confidential—to SynGen.  Defendants are now marketing Cesca's designs and inventions in a product called the SynGenX-1000, and have applied for and received a patent covering the product and technology.  As a direct result of Defendants' actions, Cesca has been deprived of its trade secrets and deprived of the ability to keep its information confidential.   In addition, without disclosing its misappropriation and misuse of Cesca's confidential information, and affirmatively and falsely misrepresenting that it owned such information, SynGen entered into a contract with a third party that has since merged with Cesca, requiring rescission of that agreement.

2.     Defendants must now, among other things, be restrained from using and further disclosing Cesca's confidential information and inventions, required to assign the SynGenX-1000 and any related patent applications and any patents issuing thereon to Cesca, and be disgorged of any illegal profits taken from Cesca and punished for their malicious conduct.

**PARTIES**

3.     Plaintiff, Cesca Therapeutics Inc., is and at all relevant times has been, a corporation organized and existing under the laws of the State of Delaware and qualified to do business in the State of California. Cesca Therapeutics Inc. is the surviving entity of a merger between ThermoGenesis Corp. and TotiPotentRX Corporation, which occurred on February 13, 2014.  (Cesca and ThermoGenesis shall be referred to as "Cesca".)

4.     At all times mentioned herein, Cesca is informed and believes, and on that basis alleges, that Defendant, SynGen Inc. ("SynGen"), is a corporation with its principal place of business in Sacramento, California.

5.     At all times mentioned herein, Cesca is informed and believes, and on that basis alleges, that Defendant, PHC Medical, Inc. ("PHC Medical"), is a corporation with its principal place of business in Sacramento, California.

6.     At all times mentioned herein, Cesca is informed and believes, and on that basis alleges, that Defendant, Philip Coelho ("Coelho"), an individual, is a resident of Sacramento County, California.

7.     At all times mentioned herein, Cesca is informed and believes, and on that basis alleges, that Defendant, Terrence Wolf ("Wolf"), an individual, is a resident of El Dorado County, California.

8.     At all times mentioned herein, Cesca is informed and believes, and on that basis alleges, that Defendant, Prince Emmanuel ("Emmanuel"), an individual, is a resident of Sacramento County, California.

9.     Cesca does not presently know the true names and capacities of the defendants named fictitiously herein as Does 1 through 10, inclusive; therefore, Cesca sues these defendants by such fictitious names.  Cesca will join these fictitiously named defendants under their actual names when ascertained.  *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 390 (1971).  SynGen, PHC Medical, Coelho, Wolf, Emmanuel, and Does 1–10 are collectively hereafter referred to as "Defendants."

COMPLAINT

1      10.     Cesca is informed and believes, and based thereon alleges, that at all times relevant

2  to this Complaint each Defendant was the agent of one or more of the other Defendants, in that

3  each Defendant was authorized by one or more of the other Defendants to act, and did act, as the

4  agent of each of the other Defendants.  Cesca further alleges that Defendants undertook the

5  actions alleged herein as agents of each other in the course and scope of their agency relationship.

6                              **JURISDICTION AND VENUE**

7      11.     This action arises in part under the patent laws of the United States, 35 U.S.C. §

8  101 et seq., and specifically under 35 U.S.C. § 256.  This Court has subject matter jurisdiction

9  over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

10      12.     With respect to the remainder of the causes of action, this Court has subject matter

11  jurisdiction over them pursuant to 28 U.S.C. § 1367.

12      13.     Upon information and belief, Defendant, SynGen, is a corporation doing business

13  within the state of California with its principal place of business located within the Eastern

14  District of California.  Furthermore, Cesca is informed and believes that each of the individual

15  defendants reside within the Eastern District of California.  As such, each Defendant has

16  sufficient contacts to establish personal jurisdiction in the Eastern District of California.

17      14.     Venue is proper pursuant to 28 U.S.C. §§ 1391 (c) and (d) because the individual

18  defendants reside within the Eastern District of California and SynGen has sufficient contacts

19  within the Eastern District of California given that its principal place of business is located

20  therein.

21                              **GENERAL ALLEGATIONS**

22      15.     Cesca designs, develops, and commercializes medical products that enable the

23  collection, processing, and cryopreservation of stem cells and other cellular tissues used in

24  research in the practice of regenerative medicine.  Worldwide, Cesca markets automated and

25  semi-automated products, along with sterile single-use companion disposable components, that

26  enable the collection, processing, and cryopreservation of adult stem cells from cord blood, bone

27  marrow, and other cellular tissues.

28

16.     One of Cesca's products is the AXP® System, which is a medical device with an accompanying disposable bag set that isolates and retrieves stem cells from umbilical cord blood. The AXP® System provides cord blood banks with an automated system to enrich adult stem cells combined with lower labor costs and a reduced risk of contamination.  The AXP® System has been commercially available since 2006; it is marketed under a Master File with the U.S. Food and Drug Administration ("FDA").  In 2007, it received a 510(k) clearance from the FDA for use in the processing of cord blood for cryopreservation.

17.     The AXP® System represents the culmination of many years of research, design, and development efforts by Cesca.  Several patents that cover the AXP® System, including U.S. Nos. 7,211,191 and 7,241,281 ("Blood Component Separation Method and Apparatus (AXP®)"), have been awarded by the United States Patent and Trademark Office and other patent offices around the world and assigned to Cesca.

**Cesca Hired Defendants To Design and Invent Products**

18.     Coelho, Wolf, and Emmanuel are former employees of Cesca who were hired specifically to design, invent and develop new products, product improvements, and inventions for Cesca.  While employed by, or under contract with, Cesca, the team of PHC Medical, Coelho, Wolf, Emmanuel, and others were actively involved in researching, designing, inventing and developing the next generation product to Cesca's AXP® System (hereinafter referred to as the "AXP® II").  Cesca invested substantial resources and time into the research, design, and development of the AXP® II.

19.     Over the course of several years, the team sought to improve the design and operation of the AXP®, including, by way of example, the structure and features of the hardware, reducing set-up time associated with preparing the AXP® System for processing blood or bone marrow, and avoiding spills and other disruptions to the operation of the AXP® System. Moreover, one or more members of the team designed the AXP® II to track more accurately the flow of fluid components through the AXP® System.

20.     Coelho is a founder and former Chief Executive Officer of Cesca. A true and correct copy of the Executive Employment Agreement between ThermoGenesis and Coelho,

wherein Coelho agreed to serve as Chief Executive Officer and then Chief Technology Architect of Cesca, is annexed hereto as Exhibit 1 and incorporated herein by this reference.  Coelho's responsibilities as Chief Technology Architect included, *inter alia*, analyzing and evaluating the development of new technology relating to ThermoGenesis' cell therapy product portfolio, including the AXP® II.

21.     On or about May 1, 2008, ThermoGenesis and Coelho terminated Coelho's employment, and the parties entered into an Employment Severance Agreement.  A true and correct copy of the Employment Severance Agreement is annexed hereto as Exhibit 2 and incorporated herein by this reference.

22.     On or about May 2, 2008, ThermoGenesis and PHC Medical, an entity of which Coelho was President, entered into a consulting agreement including a Proprietary Information and Confidentiality Agreement wherein PHC Medical agreed, *inter alia*, to provide consulting services to ThermoGenesis as an independent contractor.  A true and correct copy of the Consulting Agreement is annexed hereto as Exhibit 3 and incorporated herein by this reference.

23.     On or about October 1, 2009, Cesca, Coelho, and PHC Medical entered into a Mutual Termination Agreement, which terminated the Executive Employment Agreement, Employment Severance Agreement, and Consulting Agreement, but not the Confidential and Proprietary Information Agreement.  As part of the Mutual Termination Agreement, Coelho agreed, *inter alia*, to be bound to the Proprietary Information and Confidentiality Agreement.  A true and correct copy of the Mutual Termination Agreement is annexed hereto as Exhibit 4 and incorporated herein by this reference.

24.     Wolf was a co-founder of Cesca and was employed by Cesca from July 16, 1986, to July 1, 2010, as a manufacturing engineer.  Wolf worked, *inter alia*, on the research, design, and development of the AXP® II.

25.     Emmanuel was employed by Cesca from September 22, 2004, to April 27, 2011, as a senior director of software and electrical engineering.  Emmanuel worked, *inter alia*, on the research, design, and development of the AXP® II.

**Cesca Diligently Protects its Confidential Information, Inventions and Work, Which**

**Defendants Agreed Not To Disclose**

26.     As a result of their positions at Cesca, each of PHC Medical, Coelho, Wolf, and Emmanuel was privy to and obtained confidential and proprietary information that was of the kind provided only to those few employees at Cesca having a need to know the information to carry out their work responsibilities.

27.     Cesca's confidential and proprietary information includes ideas, techniques, inventions, systems, formulas, discoveries, technical information, programs, know-how, prototypes, copyrightable material, notes, records, drawings, designs, improvements, processes, and similar developments (the "Work"), including those developed, created, discovered, made, written, or obtained by PHC Medical, Coelho, Wolf, Emmanuel, and other Cesca employees.

28.     Cesca's confidential and proprietary information also includes customer lists; computer programs; computer software; pricing lists; business plans; financial projections and reports; business strategies; internal operating procedures; other confidential business information; information concerning current or any future and proposed work, services, or products; the fact that such work, services, or products are planned; processes; process parameters; methods or practice of operations or manufacturing; technical plans; schematics, drawings, formulas and related documentation; distribution lists; financial information; customer needs; market analysis; other compilations of information which relate to Cesca's business that are not general public information; Cesca's relations with its employees, including salaries, job classifications, and skill levels; financial sales and marketing data; financial, sales, marketing, and business plans or strategies; nonpublic pricing; and other information designated by Cesca as confidential (the "Confidential Information").

29.     Cesca has spent valuable time, labor, and substantial sums of money in researching and developing its Confidential Information and its Work, which derive independent economic value, actual or potential, from generally not being known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use, and that are the subject of efforts reasonable under the circumstances to maintain secrecy.

30.     Cesca has made reasonable efforts to protect the confidentiality and secrecy of its Confidential Information and its Work, including requiring employees with access to its Confidential Information and its Work to sign confidentiality agreements and attend confidentiality training sessions.

31.     Over the course of his employment and consulting with Cesca, Coelho was subject to several agreements not to disclose Confidential Information.  Coelho was also required to assign any Work and ideas he developed, created, discovered, made, wrote, or obtained to Cesca.

32.     As part of the Executive Employment Agreement, Coelho agreed not to disclose, take, or use any of Cesca's Confidential Information at any time during or after the agreement. Coelho also agreed that all Work and ideas developed, created, discovered, made, written, or obtained by Coelho in the course of or as a result of performance of his duties under the agreement were the property of Cesca.  Coelho agreed to take any necessary actions to assign such Work, inventions or ideas to Cesca.

33.     As part of the Employment Severance Agreement, Coelho agreed to retain in the strictest confidence all confidential matters relating to Cesca.  Coelho also agreed that all Work and ideas developed, created, discovered, made, written, or obtained by Coelho in the course of or as a result of performance of his duties under the agreement were the property of Cesca, and agreed to take any actions necessary to enable Cesca to protect its rights to the Work and any inventions and ideas.

34.     As required by the Consulting Agreement between PHC Medical and Cesca, PHC Medical entered into a Proprietary Information and Confidentiality Agreement with Cesca. Under the Proprietary Information and Confidentiality Agreement, PHC Medical, including Coelho, agreed not to use or disclose any of Cesca's Confidential Information.  PHC Medical, including Coelho, also agreed that all Work, inventions and ideas which PHC Medical developed, in whole or in part, would be the sole and exclusive property of Cesca.  PHC Medical agreed to assign all such Work, inventions or ideas to Cesca and agreed to take all steps necessary to assist Cesca in securing the assignment and protection of its rights.  The terms of the Proprietary Information and Confidentiality Agreement were stated to survive indefinitely.  A true and

1  correct copy of the Proprietary Information and Confidentiality Agreement is annexed hereto as
2  Exhibit 5 and incorporated herein by this reference.

3  35.  The Mutual Termination Agreement reaffirmed the obligation of Coelho and PHC
4  Medical not to use any Confidential Information of Cesca.

5  36.  The Executive Employment Agreement, Employment Severance Agreement,
6  Consulting Agreement, Mutual Termination Agreement, and Proprietary Information and
7  Confidentiality Agreement are hereinafter referred to as the "Coelho Agreements."

8  37.  On December 8, 2004, Wolf signed a Proprietary Information and Confidentiality
9  Training verification, a true and correct copy of which is annexed hereto as Exhibit 6 and
10  incorporated herein by this reference ("Wolf Training Verification").  The Wolf Training
11  Verification certified that Wolf completed Cesca's Proprietary Information and Confidentiality
12  training and understood that unauthorized release of Confidential Information was prohibited and
13  a serious offense.

14  38.  On July 1, 2010, Wolf and Cesca entered into an Employment Severance
15  Agreement ("Wolf Severance Agreement").  Under the Wolf Severance Agreement, Wolf agreed
16  not to use or disclose any of Cesca's Confidential Information.  Wolf also agreed that all Work,
17  inventions and ideas which he developed would be the sole and exclusive property of Cesca.
18  Wolf agreed to assign all such Work to Cesca and agreed to take all steps necessary to assist
19  Cesca in securing the assignment and protection of its rights.  A true and correct copy of the Wolf
20  Severance Agreement is annexed hereto as Exhibit 7 and incorporated herein by this reference.

21  39.  Emmanuel was party to a Proprietary Information and Confidentiality Agreement
22  ("Emmanuel Confidentiality Agreement"), a true and correct copy of which is annexed hereto as
23  Exhibit 8 and incorporated herein by this reference.  Under the Emmanuel Confidentiality
24  Agreement, Emmanuel agreed not to use or disclose any of Cesca's Confidential Information.

25  40.  On December 29, 2004, Emmanuel signed a Proprietary Information and
26  Confidentiality Training verification, a true and correct copy of which is annexed hereto as
27  Exhibit 9 and incorporated herein by this reference ("Emmanuel Training Verification").  The
28  Emmanuel Training Verification certified that Emmanuel completed Cesca's Proprietary

1   Information and Confidentiality training and understood that unauthorized release of Confidential

2   Information was a serious offense.

3       41.    On April 27, 2011, Emmanuel and Cesca entered into an Employment Severance

4   Agreement ("Emmanuel Severance Agreement").  Under the Emmanuel Severance Agreement,

5   Emmanuel agreed not to use or disclose any of Cesca's Confidential Information.  Emmanuel also

6   agreed that all Work, inventions and ideas which he developed would be the sole and exclusive

7   property of Cesca. Emmanuel agreed to assign all such Work to Cesca and agreed to take all steps

8   necessary to assist Cesca in securing the assignment and protection of its rights.  A true and

9   correct copy of the Emmanuel Severance Agreement is annexed hereto as Exhibit 10 and

10  incorporated herein by this reference.

11      42.    The Coelho Agreements, Wolf Training Verification, Wolf Severance Agreement,

12  Emmanuel Confidentiality Agreement, Emmanuel Training Verification, and Emmanuel

13  Severance Agreement are hereinafter referred to as the "Agreements."

14  **Defendants Developed a Competing Product for SynGen Using Cesca's Confidential**

15  **Information and Work**

16      43.    On information and belief, following his employment with Cesca, Coelho formed

17  SynGen.  On information and belief, Coelho recruited Wolf and Emmanuel to work for SynGen,

18  and Wolf and Emmanuel are currently employees of SynGen.

19      44.    On information and belief, armed with the Confidential Information and Work of

20  Cesca, Coelho, Wolf, and Emmanuel, through SynGen, decided to commercially exploit the

21  confidential information and Work developed at and belonging to Cesca.

22      45.    On information and belief, on March 17, 2011, Coelho filed non-provisional patent

23  application No. 13/634,520 (the "'520 application") entitled "System for Purifying Certain Cell

24  Populations in Blood or Bone Marrow by Depleting Others" and a Patent Cooperation Treaty

25  ("PCT") counterpart, PCT/US11/28863, listing himself as the sole inventor and assigning the

26  application to SynGen.  The '520 application was published on or about January 31, 2013, and the

27  PCT application was published on or about September 22, 2011.  Both applications claim priority

28  to provisional application No. 61/315,109, filed on or about March 18, 2010, and provisional

1    application No. 61/436,964, filed on or about January 27, 2011.  The '520 application resulted in

2    U.S. patent No. 8,747,289 ('289 patent).  On information and belief, the '520 application and

3    '289 patent incorporates Cesca's Confidential Information and Work and covers a product

4    currently being marketed by SynGen, called the SynGenX-1000 (the "SG-1000").

5         46.     On information and belief, the SG-1000 device incorporates Cesca's Confidential

6    Information and Work developed by PHC Medical, Coelho, Wolf, Emmanuel, and other Cesca

7    employees (including, but not limited to, Menachem "Moni" Shavit and Brian Malone) during

8    their employment with Cesca, which are the property of Cesca, including several features and

9    design components specifically designed for the AXP® II.  Without the benefit and advantages of

10   having been employed at Cesca and obtaining this information while employed by Cesca,

11   Defendants would have had to spend years of work and invest millions of dollars to develop the

12   same technology independently.

13        47.     On information and belief, Coelho has publicly disclosed the SG-1000 by showing

14   it at trade shows.

15        48.     On information and belief, Defendants are currently marketing and trying to sell

16   the SG-1000 to others, including but not limited to Cesca's current clients, as a replacement for

17   the AXP® System.

18        49.     In filing for the '520 application, Defendants misappropriated the very

19   Confidential Information and Work that they obtained while employed by Cesca, which are

20   properly owned by Cesca.

21        50.     Defendants have misused and converted Cesca's Confidential Information and

22   Work by using that information as part of the disclosure and claims of the '520 application and

23   '289 patent.  The Confidential Information and Work have now been placed into the public

24   domain as a direct result of the publication of the '520 application, the '289 patent and the SG-

25   1000.

26   ///

27   ///

28   ///

**Cesca Has Been Damaged, and Will Continue To Be Damaged, By Defendants' Misappropriation**

51.     As a result of Defendants' misappropriation of Cesca's Confidential Information and Work, Defendants' production, marketing, and sale of that information in the SG-1000, and Defendants' disclosure of that information in the '520 application, Cesca has been damaged and will continue to be damaged.

52.     Cesca devoted great sums of money to researching and developing its Confidential Information and Work, including through its employment of PHC Medical, Coelho, Wolf, Emmanuel, and other employees.

53.     As a result of Defendants' conduct, Cesca no longer has complete control over its Confidential Information and Work and has lost the ability to control the further development of its Confidential Information and Work, including the further development, production, and marketing of the designs and ideas relating to the AXP® II.  Cesca has also lost the ability to control the disclosure of the Confidential Information and Work.

54.     As a result of Defendants' conduct, Defendants, and not Cesca, will reap the profit from sales of the Confidential Information and Work in the form of the SG-1000 and the '289 patent.

55.     Unless the Court enjoins Defendants' behavior, Cesca will be injured in ways that could not be compensated by monetary damages alone.  Due to its quality work, long experience, and skill in creating and marketing its products, Cesca has developed a reputation for quality in the market for cord blood products and is a market leader in the industry.  If SynGen continues to market and sell Cesca's Confidential Information and Work under SynGen's name, Cesca's reputation for providing the highest quality cord blood products will be damaged.

56.     Furthermore, unless the Court enjoins Defendants' behavior, Cesca's market share in the industry will necessarily erode in a way that could not be recovered through mere payment of damages.  Consumers of cord blood products generally make substantial capital investments in those products, which are also subject to stringent licensing requirements when a new product is purchased.  If SynGen is permitted to capture consumers from Cesca using Cesca's Confidential

1    Information and Work, those consumers would continue to purchase the SG-1000 for years to

2    come, given the high cost of switching back to Cesca.  Cesca might never recover the lost market

3    share and would be irreparably harmed by Defendants' unlawful conduct.

**SynGen Misrepresents and Induces TotiPotentRX (now Cesca) to Enter Into a Stock**

**Purchase Agreement**

6         57.    In or around October 2011, Defendant, SynGen Inc. entered into various

7    agreements with TotiPotentRX, including a "Stock Purchase Agreement" ("SPA"). Section 3.8 of

8    the SPA provides that SynGen represents that it is sole owner of its intellectual property rights,

9    including its product designs and patents.  SynGen misrepresented its ownership of its intellectual

10   property to induce TotiPotentRX to enter into the foregoing SPA.  TotiPotentRX paid SynGen

11   $250,000 for the first of two blocks of stock that it agreed to purchase in the SPA, and now

12   Cesca, based on the rights it acquired through the merger between TotiPotentRX and

13   ThermoGenesis, seeks rescission and restitution.

14        58.    As alleged, on or about February 13, 2014, TotiPotentRX merged with

15   Thermogenesis, becoming Cesca.  The contract entered into based upon SynGen's misrepresented

16   claim of ownership of that confidential information should be rescinded.

17        59.    In the SPA, SynGen represented that it had title and ownership of, license to, or

18   full right to use, all intellectual property used in or necessary for its business as now conducted

19   and as proposed to be conducted as contemplated by the SPA and documents related to the

20   transaction between SynGen and TotiPotentRX.  However, as alleged herein, SynGen did not

21   actually have title or ownership, license to, or full right to use the intellectual property that is

22   referred to in the SPA.

23        60.    Relying on SynGen's express representations in the SPA, including but not limited

24   to Section3.8, TotiPotentRX paid $250,000 for stock in SynGen.

25        61.    Because TotiPotentRX and ThermoGenesis merged in February 2014 and

26   effectively became Cesca, Cesca has all right and title to the foregoing agreements and standing

27   to bring the related causes of action alleged herein.

28

{1796794.DOCX;}                                    -12-

**FIRST CAUSE OF ACTION**

**(Breach of Contract – Against Defendants PHC Medical, Inc., Philip Coelho, Terrence Wolf, Prince Emmanuel, and Does 1 through 10, Inclusive)**

62.    Cesca repeats and realleges each and every allegation contained in paragraphs 1 through 61, inclusive, of this Complaint with the same force and effect as if said allegations were fully repeated and realleged at length herein.

63.    As stated herein, Defendants PHC Medical, Coelho, Wolf, and Emmanuel are parties to Agreements with Cesca that obligate them to maintain the confidentiality of Cesca's Confidential Information and not to take, use, or disclose that information.

64.    Defendants, PHC Medical, Coelho, Wolf, and Emmanuel are parties to Agreements with Cesca that obligate them to assign to Cesca any Work, inventions and ideas developed during the course of their employment.

65.    Cesca has performed, or been excused from performing by reason of Defendants' breaches, each, every, and all of the obligations required to be performed by Cesca under the Agreements.

66.    Defendants breached the Agreements by failing to maintain the confidentiality of Cesca's Confidential Information and taking, using, and disclosing that information for Defendants' benefit.

67.    Defendants also breached the Agreements by failing to assign to Cesca Work, inventions and ideas developed during the course of their employment, including ideas that were ultimately incorporated into the '520 application, '289 patent and the SG-1000.   Defendants' misuse, misappropriation, and disclosure of Cesca's Confidential Information and Work, including Defendants' use and disclosure of Cesca's Confidential Information and Work for their own benefit, and Defendants' failure to assign all rights, title, and interest in their ideas to Cesca, constitute willful breach of the terms of the Agreements.

68.    As a result of Defendants' breaches of the Agreements, Cesca has been damaged in an amount to be proven at trial.

{1796794.DOCX;}

-13-

1

**SECOND CAUSE OF ACTION**

2

**(Specific Performance of Contract – Against Defendants PHC Medical, Inc., Philip Coelho,**

3

**Terrence Wolf, Prince Emmanuel, and Does 1-10, inclusive)**

4

       69.     Cesca repeats and realleges each and every allegation contained in paragraphs 1

5

through 68, inclusive, of this Complaint with the same force and effect as if said allegations were

6

fully repeated and realleged at length herein.

7

       70.     As stated herein, Defendants PHC Medical, Coelho, Wolf, and Emmanuel are

8

parties to Agreements with Cesca that obligate them to assign to Cesca any Work, inventions and

9

ideas developed during the course of their employment.

10

       71.     Cesca has performed, or been excused from performing by reason of Defendants'

11

breaches, each, every, and all of the obligations required to be performed by ThermoGenesis

12

under the Agreements.

13

       72.     Defendants failed, and continue to fail, to perform the conditions of the

14

Agreements on their part in that they failed to disclose and assign to Cesca Work developed

15

during the course of their employment, including Work, inventions and ideas that were ultimately

16

incorporated into the '520 application, the '289 patent  and the SG-1000.

17

       73.     For the reasons heretofore stated, Cesca has no adequate legal remedy in that

18

damages will be inadequate to compensate Cesca for the detriment suffered by it.

19

       74.     Therefore, Cesca prays that Defendants be ordered to disclose and assign to Cesca

20

all rights, title, and interest in their Work, inventions and ideas developed during the course of

21

their employment with Cesca, including ideas that were ultimately incorporated into the '520

22

application, the '289 patent, and any related patents, patent applications and the technology

23

related to the SG-1000.

24

///

25

///

26

///

27

///

28

///

**THIRD CAUSE OF ACTION**

**(Declaratory Relief - Correction of Inventorship Under 35 U.S.C. § 256 –**

**Against Philip Coelho and SynGen)**

75.     Cesca repeats and realleges each and every allegation contained in paragraphs 1 through 74, inclusive, of this Complaint with the same force and effect as if said allegations were fully repeated and realleged at length herein.

76.     The inventorship of the '289 patent is incorrect because through the unlawful acts of the Defendants herein, Defendants utilized Cesca's confidential trade secret information to create the product that is the subject of the '289 patent.

77.     As alleged above, Cesca is the rightful owner of the intellectual property underlying the SG-1000 and the '289 patent.  That intellectual property was actually invented and developed by a team of Cesca employees which include, but are not limited to, Menachem ("Moni"), Shavit ("Shavit") and Brian Malone ("Malone").  All of these Cesca employees had executed confidentiality and proprietary information agreements assigning all Confidential Information, inventions, innovations, ideas and Work to Cesca.  These inventors are the rightful inventors of the conceptual contributions and the reduction to practice of the inventions claimed in the '289 patent.  However, neither Shavit, Malone nor any other Cesca employee (except Coelho) is listed as an inventor in the '289 patent.

78.     The omission of Cesca employees (including but not limited to Shavit and Malone) as the inventors of the patent at issue herein occurred through the deceptive intent of Coelho and/or SynGen, but through no fraudulent act or deceptive intention of Cesca.

79.     Cesca has standing to request a correction of inventorship of the patent at issue herein.  As an assignee of the innovations and inventions disclosed and claimed in the '289 patent, Cesca is an owner of the '289 patent and an equitable titleholder to the '289 patent.

80.     All parties concerned with the inventorship of the subject patent for which correction of inventorship is sought have been put on notice or will be put on notice pursuant to filing and service of this Complaint.  The '289 patent must be corrected pursuant to 35 U.S.C. § 256 to name Cesca employees (including Malone and Shavit) as inventors.

**FOURTH CAUSE OF ACTION**

**(Misappropriation of Trade Secrets under Civil Code § 3426 *et seq.* – Against SynGen**

**Inc., PHC Medical, Inc., Philip Coelho, Terrence Wolf, Prince Emmanuel,**

**and Does 1-10, inclusive)**

81.     Cesca repeats and realleges each and every allegation contained in paragraphs 1 through 80,  inclusive, of this Complaint with the same force and effect as if said allegations were fully repeated and realleged at length herein.

82.     Cesca's Confidential Information and Work constitute protectable trade secrets under the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*

83.     Cesca has made reasonable and appropriate efforts to protect the secrecy of its Confidential Information and Work.

84.     Cesca's Confidential Information and Work cannot readily be ascertained by any of the usual and ordinary methods employed in competitive business.  The Confidential Information and Work derive independent economic value, actual and potential, from not being generally known to the public or other persons who can obtain economic value from their disclosure or use.

85.     Defendants, and each of them, knowingly and willfully disclosed, misused, and misappropriated the Confidential Information and Work by taking the Confidential Information and Work to SynGen, incorporating the Confidential Information and Work into the '520 application, the '289 patent and SG-1000, disclosing the Confidential Information and Work in the '520 application, '289 patent and through the marketing of the SG-1000, and otherwise using the Confidential Information and Work for Defendants' benefit and to Cesca's detriment. Defendants were fully aware of the confidentiality and secrecy of the information they misappropriated.

86.     Defendants are using and disclosing Confidential Information and Work of Cesca, obtained by virtue of their relationships with Cesca, for their own benefit or the benefit of others.

87.     As a proximate result of Defendants' disclosure, misuse, and misappropriation, Cesca has sustained, and will continue to sustain, damages in an amount according to proof at

1    trial.  As a further proximate result of the misappropriation, Defendants have been unjustly

2    enriched by their use and disclosure of the Confidential Information and Work in the SG-1000

3    and the '520 application in an amount not yet ascertained.

4            88.     As a further direct and proximate result of Defendants' misappropriation of trade

5    secrets, Cesca has suffered and will continue to suffer great and irreparable harm unless and until

6    Defendants' wrongful conduct is enjoined.  Thus, due to the inadequacy of monetary damages to

7    compensate Cesca for Defendants' continuing misappropriation of Cesca's Confidential

8    Information and Work, Cesca is entitled to injunctive relief in accordance with Civil Code

9    Section 3426.2 enjoining Defendants from the further disclosure, misuse, and misappropriation of

10   Cesca's Confidential Information and Work.

11           89.     Defendants' conduct in disclosing, misusing, and misappropriating Cesca's

12   Confidential Information and Work was willful and malicious, and Defendants acted with a

13   conscious and wanton disregard of Cesca's rights and with intent to injure Cesca and improve

14   their own business.  Cesca is, therefore, entitled to punitive and exemplary damages in

15   accordance with Civil Code Section 3426.3(c) and statutory attorneys' fees under Civil Code

16   Section 3426.4.

17                              **FIFTH CAUSE OF ACTION**

18   **(for Conversion – Against SynGen Inc., PHC Medical, Inc., Philip Coelho, Terrence Wolf,**

19                  **Prince Emmanuel, and Does 1-10, inclusive)**

20           90.     Cesca repeats and realleges each and every allegation contained in paragraphs 1

21   through 89, inclusive, of this Complaint with the same force and effect as if said allegations were

22   fully repeated and realleged at length herein.

23           91.     At all times herein mentioned, Cesca was, and still is, the owner of its Confidential

24   Information and Work.

25           92.     Defendants do not have any ownership rights in any of the Confidential

26   Information and Work developed or otherwise obtained while Coelho, Wolf, and Emmanuel were

27   employed by Cesca.  Defendants each misused and misappropriated Confidential Information and

28

1    Work owned and belonging to Cesca, and have converted that information by applying for and

2    receiving a patent and incorporating such information into products.

3          93.    Furthermore, by failing to assign their ideas and patent rights to Cesca, PHC

4    Medical, Coelho, Wolf, and Emmanuel have violated their obligation to disclose and assign under

5    the terms of the Agreements and under the laws of the State of California.  Defendants' use and

6    disclosure of Cesca's Confidential Information and Work constitutes conversion.

7          94.    As a result of their conversion, Defendants have caused damage to Cesca.

8          95.    Defendants' conversion of Cesca's Confidential Information and Work was willful

9    and malicious in that Defendants, with reckless indifference and willful and conscious disregard

10   for the rights of any person who may have had an interest in the converted information, and

11   particularly for the rights of Cesca, did convert the information.

12                              **SIXTH CAUSE OF ACTION**

13   **(for Unfair Competition under Business & Professions Code § 17200 and California**

14   **Common Law – Against SynGen Inc., PHC Medical, Inc., Philip Coelho, Terrence Wolf,**

15   **Prince Emmanuel, and Does 1-10, inclusive)**

16         96.    Cesca repeats and realleges each and every allegation contained in paragraphs 1

17   through 95, inclusive, of this Complaint with the same force and effect as if said allegations were

18   fully repeated and realleged at length herein.

19         97.    California Business & Professions Code Section 17200 provides in pertinent part

20   that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or

21   practice."

22         98.    Each of the acts of Defendants complained of above constitutes unlawful or unfair

23   or fraudulent business practices.

24         99.    The above acts, unless restrained, threaten to and will irreparably injure Cesca's

25   business, goodwill, and reputation, and significantly damage Cesca's market position through the

26   disclosure of its Confidential Information and Work.  Accordingly, Cesca is entitled to

27   appropriate injunctive relief against further acts of unfair competition by Defendants.

28         100.   Cesca is entitled to restitution from Defendants.

{1796794.DOCX;}                              -18-

1    101.    Cesca is also entitled to recover from Defendants, and each of them, for their

2    violation of California's common law of unfair competition, exemplary damages for their

3    wrongful conduct in an amount sufficient to punish and deter them from competing unfairly in the

4    future.

5                                   **SEVENTH CAUSE OF ACTION**

6    **(for Declaratory Relief – Against SynGen Inc., PHC Medical, Inc., Philip Coelho, Terrence**

7                       **Wolf, Prince Emmanuel, and Does 1-10, inclusive)**

8    102.    Cesca repeats and realleges each and every allegation contained in paragraphs 1

9    through 101, inclusive, of this Complaint with the same force and effect as if said allegations

10   were fully repeated and realleged at length herein.

11   103.    An actual controversy has arisen and now exists between Cesca and Defendants

12   concerning their respective rights and duties in that Cesca contends that it is the equitable owner

13   of the SG-1000, which Defendant SynGen is now marketing, and the '289 patent and any and all

14   related U.S. and/or foreign patent applications.

15   104.    Cesca desires a judicial determination of its rights and duties, and a declaration as

16   to the equitable ownership of the technology alleged above, the SG-1000, '520 application, the

17   '289 patent, and any and all related patent applications.

18   105.    A judicial declaration is necessary and appropriate at this time under the

19   circumstances in order that Cesca may ascertain its rights and duties as to the equitable ownership

20   of the SG-1000 and the '520 application.  Declaratory relief would inform the parties' future

21   conduct and lessen the burden caused by the unsettled state of affairs.

22                                   **EIGHTH CAUSE OF ACTION**

23   **(for Unjust Enrichment – Against SynGen Inc., PHC Medical, Inc., Philip Coelho, Terrence**

24                       **Wolf, Prince Emmanuel, and Does 1-10, inclusive)**

25   106.    Cesca repeats and realleges each and every allegation contained in paragraphs 1

26   through 105, inclusive, of this Complaint with the same force and effect as if said allegations

27   were fully repeated and realleged at length herein.

28

{1796794.DOCX;}                              -19-

107.    Defendants have improperly enriched and continue to improperly enrich themselves from Cesca's Confidential Information and Work by applying for the '520 application, obtaining the '289 patent and attempting to and marketing and selling the SG-1000, thereby receiving financial proceeds and other commercial benefits and advantages.

108.    Defendants' enrichment is at Cesca's expense, as Cesca has not received any such financial proceeds or other commercial benefits and advantages arising from the SG-1000 and the '520 application, and the '289 patents and any and all related U.S. and/or foreign patent applications.

109.    It would be unjust for Defendants to retain the financial proceeds and other commercial benefits and advantages they improperly received from Cesca's Confidential Information and Work.

110.    Defendants' unjust enrichment, in an amount to be proven at trial, should be disgorged from them and awarded to Cesca.

## NINTH CAUSE OF ACTION

**(for Constructive Trust – Against SynGen Inc., PHC Medical, Inc., Philip Coelho, Terrence Wolf, Prince Emmanuel, and Does 1-10, inclusive)**

111.    Cesca repeats and realleges each and every allegation contained in paragraphs 1 through 110, inclusive, of this Complaint with the same force and effect as if said allegations were fully repeated and realleged at length herein.

112.    Defendants, acting in concert with one another, have misappropriated Cesca's Confidential Information and Work as more fully alleged above.

113.    As a result of Defendants' wrongdoing as hereinabove alleged, all unfair and illegal profits were wrongfully obtained by Defendants.

114.    Cesca is entitled to a constructive trust over all such unfair and illegal profits.

///

///

///

///

1

**TENTH CAUSE OF ACTION**

2

**(Injunctive Relief – Against SynGen Inc., PHC Medical, Inc., Philip Coelho, Terrence Wolf,**

3

**Prince Emmanuel, and Does 1-10, inclusive)**

4

115.    Cesca repeats and realleges each and every allegation contained in paragraphs 1

5

through 114, inclusive, of this Complaint with the same force and effect as if said allegations

6

were fully repeated and realleged at length herein.

7

116.    Defendants have, inter alia, misappropriated Cesca's Confidential Information and

8

Work.  Such conduct has irreparably harmed and continues to irreparably harm Cesca, and an

9

award of monetary damages may not be sufficient to compensate Cesca for such irreparable harm.

10

117.    Accordingly, the Court should issue appropriate injunctive relief restraining

11

Defendants from engaging in the wrongful conduct herein alleged.

12

**ELEVENTH CAUSE OF ACTION**

13

**(for Relief Based on Rescission – Against SynGen Inc. and Does 1-10)**

14

118.    Cesca repeats and realleges each and every allegation contained in paragraphs 1

15

through 117, inclusive, of this Complaint with the same force and effect as if said allegations

16

were fully repeated and realleged at length herein.

17

119.    In or about October, 2011, TotiPotentRX and SynGen entered into a SPA, SynGen

18

represented that it had sole title and ownership of, license to, or full right to use, all intellectual

19

property used in or necessary for its business as now conducted and as proposed to be conducted

20

as contemplated in its  transactions with TotiPotentRX.  However, SynGen did not have title,

21

ownership, or a license to use,  the intellectual property and confidential information that is the

22

subject of this Action and therefore SynGen made a material misrepresentation to induce

23

TotiPotentRX to enter into the SPA.

24

120.    In or about October, 2011, SynGen made the representation in Section 3.8 of the

25

SPA knowing it to be false and with the intent to deceive TotiPotentRX and to induce it to enter

26

into the SPA.

27

121.    At the time the representations were made, TotiPotentRX was unaware that the

28

representations were false, but believed them to be true and reasonably relied on them.

{1796794.DOCX;}

-21-

COMPLAINT

122.     TotiPotentRX subsequently merged with Cesca in February 2014 .  Subsequent to the merger, Cesca discovered the foregoing material misrepresentations made by SynGen. TotiPotentRX fully fulfilled its obligations under the SPA.  Prior to the discovery of the material misrepresentations, TotiPotentRX had no reasonable method of discovering them.

123.     Service of the summons and complaint in this action shall serve as notice of rescission of the SPA.  Cesca hereby offers to restore all consideration furnished by SynGen under the SPA, on condition that SynGen restores to Cesca the consideration furnished by Cesca, specifically, the sum of $ 250,000, representing the cost for the acquisition of the first block of stock purchased by TotiPotentRX pursuant to the SPA.

124.     In performing the acts herein alleged, SynGen intentionally misrepresented material facts known to SynGen, specifically, its ownership/right to use the intellectual property and confidential information that is discussed in the SPA, as more completely discussed above, with the intention of depriving Cesca (then TotiPotentRX) of its money, thereby justifying an award of punitive damages against SynGen.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Cesca prays for judgment against Defendants as follows:

1.     Compensatory damages in an amount to be determined at trial, together with pre-judgment and post-judgment interest on such damages;

2.     Disgorgement of Defendants' unjust enrichment;

3.     Punitive or exemplary damages;

4.     Restitution damages;

5.     That the Court declare that the Stock Purchase Agreement between TotiPotentRX (now Cesca) and SynGen has been rescinded; and an order that the $250,000 paid by TotiPotentRX be restored to Cesca.

6.     Defendants and their agents, servants, and employees, and all persons, acting under, in concert with, or for Defendants, be enjoined from using, disclosing, marketing, or delivering Confidential Information and Work of Cesca, including producing, marketing, or selling the SG-1000;

7.      Equitable relief to remedy Defendants' misconduct, including a constructive trust over all the benefits Defendants derived from use of Cesca's Confidential Information and Work;

8.      Specific performance of Defendants' obligations under the Agreements, including but not limited to the disclosure and assignment of all title, right, interest, and ownership in the Work, the SG-1000, the '289 patent and any and all related patents pending or granted in the United States or abroad;

9.      A declaration that Cesca is the equitable owner of the SG-1000, its technology, '289 patent, and any and all U.S. and foreign issued patents and pending patent applications which concern or reflect  and the '520 application;

10.     An order for correction of the '289 patent pursuant to 35 U.S.C. § 256 to name Brian Malone and Menachem ("Moni") Shavit as inventors thereof and such other inventors as required by proof;

11.     An order for establishment of a constructive trust pendent lite for all monies received or acquired by Defendants as a result of the wrongful conduct alleged herein;

12.     For recoverable interest, as permitted by law;

13.     For reasonable attorneys' fees and costs;

14.     For costs of suit; and

15.     For such other and further relief as the Court may deem just and proper.

DATED:  September 9, 2014                **weintraub tobin** chediak coleman grodin
                                         LAW CORPORATION


                                         By:___/s/ - Charles L. Post_____
                                              CHARLES L. POST
                                              JOSH H. ESCOVEDO
                                              Attorneys for Plaintiff,
                                              Cesca Therapeutics Inc.

1

**DEMAND FOR JURY TRIAL**

2          TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN

3   DISTRICT OF CALIFORNIA AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

4          PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 38(b), Plaintiff, CESCA

5   THERAPEUTICS INC. hereby demands a jury trial.

6   DATED:  September 9, 2014        **weintraub tobin** chediak coleman grodin
                                      LAW CORPORATION
7

8

9                                By:  ___/s/ - Charles L. Post_____
                                      CHARLES L. POST
10                                    JOSH H. ESCOVEDO
                                      Attorneys for Plaintiff,
11                                    Cesca Therapeutics Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{1796794.DOCX;}                       -24-

COMPLAINT