UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESCA THERAPEUTICS INC., <br><br> Plaintiff, <br><br> v. <br><br> SYNGEN, INC., PHC MEDICAL, INC., AND PHILIP COELHO, <br><br> Defendants.* | No. 2:14-cv-02085-GEB-KJN <br><br> **ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

Defendants SynGen, Inc. ("SynGen"), PHC Medical, Inc. ("PHC Medical"), and Philip Coelho ("Coelho") (collectively, "Defendants") "move for an order to compel arbitration of all claims asserted against all Defendants in the Complaint filed by Plaintiff Cesca Therapeutics Inc." ("Cesca"). (Defs.' Notice of Mot. 1:5–6, ECF No. 41.) Cesca opposes the motion, arguing "[t]here are no controlling arbitration provisions applicable to this action." (Pl.'s Opp'n to Defs.' Mot. to Compel Arbitration ("Opp'n") 6:9, ECF No. 42.)

**I. FACTUAL BACKGROUND**

The following factual allegations in Cesca's Complaint concern this motion.

---

* The caption has been amended according to the stipulated dismissal of Defendants Terrence Wolf and Prince Emmanuel. (ECF No. 40.)

1

1 "Cesca designs, develops, and commercializes medical products that enable the collection, processing, and cryopreservation of stem cells and other cellular tissues used in research in the practice of regenerative medicine." (Compl. ¶ 15, ECF No. 2.) "Cesca . . . is the surviving entity of a merger between ThermoGenesis Corp. [("ThermoGenesis")] and TotiPotentRX Corporation, which occurred on February 13, 2014." (Compl. ¶ 3.)

"Coelho . . . [is a] former employee[] of Cesca who w[as] hired specifically to design, invent and develop new products, product improvements, and inventions for Cesca." (Compl. ¶ 18.) Specifically, "Coelho is a founder and former Chief Executive Officer of Cesca." (Compl. ¶ 20.) In 2007, Coelho and ThermoGenesis entered into an Executive Employment Agreement, which contained an arbitration provision. (Compl. ¶ 20, Ex. 1 § 11, ECF No. 11.)

"On or about May 1, 2008, ThermoGenesis and Coelho terminated Coelho's employment, and the parties entered into an Employment Severance Agreement." (Compl. ¶ 21.) The Employment Severance Agreement contains an arbitration provision. (Ex. 2 § 14.5.)

"On or about May 2, 2008, ThermoGenesis and PHC Medical, an entity of which Coelho was President, entered into a [C]onsulting [A]greement including a Proprietary Information and Confidentiality Agreement wherein PHC Medical agreed, *inter alia*, to provide consulting services to ThermoGenesis as an independent contractor." (Compl. ¶ 22.) The Consulting Agreement contains an arbitration provision, (Ex. 3 § 19), whereas the Proprietary Information and Confidentiality Agreement contains a "Governing

2

Law" section, which states in pertinent part: "Any legal action or proceeding relating to this Agreement shall be instituted in a state or federal court in Sacramento County, California." (Ex. A in Ex. 3 § 5.1.)

"On or about October 1, 2009, [ThermoGenesis], Coelho, and PHC Medical entered into a Mutual Termination Agreement, which terminated the Executive Employment Agreement, Employment Severance Agreement, and Consulting Agreement, but not the [Proprietary Information and Confidentiality] Agreement." (Compl. ¶ 23.)

The Mutual Termination Agreement provides in pertinent part:

> The Consulting Agreement (dated May 2, 2008), the Executive Employment Agreement (to the extent any provisions survived execution of the Employment Severance Agreement), the Employment Severance Agreement (dated May 1, 2008) and any other employment agreements between [ThermoGenesis] and Coelho, whether oral or in writing, (collectively, the "Prior Agreements") are hereby terminated as of [October 1, 2009]. [ThermoGenesis] shall have no further or ongoing obligations to pay any further sums to [PHC Medical] or Coelho under the Prior Agreements, except as explicitly provided for in this Agreement. Neither Coelho nor [PHC Medical] shall have any further or ongoing obligations to [ThermoGenesis] under the Prior Agreements or any other agreement, whether written or oral, between [ThermoGenesis] and Coelho, or between [ThermoGenesis] and [PHC Medical], except as explicitly set forth in this Agreement.

(Ex. 4 § 1.)

The Mutual Termination Agreement's "Governing Law and Venue" section further provides: "Any legal action or proceeding relating to this Agreement shall be instituted in a state or

3

federal court in Sacramento, County California." (Ex. 4 § 9.)

The Mutual Termination Agreement also contains an "Entire Agreement" section which states in pertinent part: "This Agreement contains the entire agreement and understandings by and between the Parties with respect to the subject matter hereof, and no representations, promises, agreements or understandings concerning such subject matter, written or oral, not herein contained shall be of any force or effect." (Ex. 4 § 10.)

"[F]ollowing his employment with Cesca, Coelho formed SynGen." (Compl. ¶ 43.)

## II.  DISCUSSION

### A.  Defendants Coelho and PHC Medical

Defendants Coelho and PHC Medical seek to enforce arbitration provisions between ThermoGenesis and Coelho, and ThermoGenesis and PHC Medical, found in the Executive Employment Agreement, the Employment Severance Agreement, and the Consulting Agreement. (Mem. P.&A. in Supp. of Defs.' Mot. to Compel Arbitration ("Mot.") 6:6–10, ECF No. 41-1.) They argue these arbitration provisions survived the October 2009 Mutual Termination Agreement because "[p]arties' duties under an arbitration clause survive contract termination when the dispute is over an obligation the expired contract arguably created." (Mot. 8:22–28 n.2 (citations omitted).)

Cesca counters, *inter alia*, that "the intention of the parties is clear from the plain language of the Mutual Termination Agreement—to replace the parties' obligations under [the Executive Employment Agreement, the Employee Severance Agreement, and the Consulting Agreement] with the obligations set

4

forth in the Mutual Termination Agreement. In particular, the parties . . . indicated a desire to forego arbitration by expressly requiring all disputes under the Mutual Termination Agreement to be resolved in state or federal court." (Opp'n 9:11–16.)

Defendants Coelho and PHC Medical reply, *inter alia*, that Cesca has sued them "over obligations and rights created by the [Executive Employment Agreement, the Employee Severance Agreement, and the Consulting Agreement]." (Reply in Supp. of Defs.' Mot. ("Reply") 4:17–18, ECF No. 44.) They further respond: "If [Cesca] wants to enforce the [Executive Employment Agreement, the Employee Severance Agreement, and the Consulting Agreement], based on acts or omissions that occurred or rights that accrued while these three contracts were in effect, then it must abide by the arbitration clauses in these agreements." (Reply 5:26, 6:1–3.)

A district "court's role under the [Federal Arbitration] Act is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). Moreover, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT & T Technologies, Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986).

"In deciding these questions, federal courts must 'place arbitration agreement on equal footing with other

contracts.'" Samson v. NAMA Holdings, LLC, 637 F.3d 915, 924 (9th Cir. 2011) (quoting E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 293 (2002)). "Thus, [t]o evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." Id. (alteration in original) (citations and internal quotation marks omitted).

Further, "[a]rbitration provisions can survive expiration of an agreement where (1) 'the dispute is over a provision of the [prior] agreement' and (2) the parties have not indicated a desire to forego arbitration either 'expressly or by clear implication.'" Thelen Reid Brown Raysman & Steiner LLP v. Marland, 319 F. App'x 676, 678–79 (9th Cir. 2009) (quoting Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 255 (1977)).

The Mutual Termination Agreement controls here. Coelho, PHC Medical, and ThermoGenesis (Cesca's predecessor) terminated the Executive Employment Agreement, the Employee Severance Agreement, and the Consulting Agreement by subsequently entering into the Mutual Termination Agreement. (Ex. 4 § 1.)

Further, the Mutual Termination Agreement supersedes the prior agreements' arbitration provisions, and therefore, those arbitration provisions no longer control the proper forum for this litigation. Specifically, the Mutual Termination Agreement's "Termination of Prior Agreements and Obligations" section provides in pertinent part: "Neither Coelho nor [PHC Medical] shall have any further or ongoing obligations to [ThermoGenesis] under the Prior Agreements or any other

agreement, whether written or oral, between [ThermoGenesis] and Coelho, or between [ThermoGenesis] and [PHC Medical], <u>except</u> as explicitly set forth in this Agreement." (Ex. 4 § 1.) Additionally, the Mutual Termination Agreement's integration clause, found in the "Entire Agreement" section, provides in pertinent part: "This Agreement contains the entire agreement . . . . [N]o representations, promises agreements or understandings concerning [the] subject matter[ hereof], written or oral, not herein contained shall be of any force or effect." (Ex. 4 § 10.) Thus, the integration clause provides that the Mutual Termination Agreement governs the parties' obligations.[1] See <u>Granite Rock Co. v. Teamsters Union Local No. 890</u>, No. C 12-02974 MEJ, 2012 WL 5877494, at *4–5 (N.D. Cal. Nov. 20, 2012) (finding later collective bargaining agreement's integration clause "extinguishe[d] Plaintiff's arbitration rights under" earlier collective bargaining agreement, where the integration clause "provide[d] that the parties will not be bound by any previous contracts, and that [the later collective bargaining agreement] constitute[d] the entire agreement of the parties"). Thus, the Mutual Termination Agreement, which does not require arbitration, controls the proper forum for this litigation.

Moreover, even if the court assumes that this dispute is over provisions of the prior agreements, as Defendants contend, the parties here have expressly indicated a desire to forego arbitration. The Executive Employment Agreement, the Employee Severance Agreement, and the Consulting Agreement

---

[1] In turn, the Mutual Termination Agreement cites the Proprietary Information and Confidentiality Agreement. (Ex. 4 § 3.)

contain arbitration provisions, but the Mutual Termination Agreement contains its own "Governing Law and Venue" section. As stated above, this section does not require arbitration and instead provides that "[a]ny legal action or proceeding relating to this Agreement shall be instituted in a state or federal court in Sacramento County, California." (Ex. 4 § 9.) Thus, the Mutual Termination Agreement "indicate[s] a desire to forego arbitration either expressly or by clear implication." See Thelen Reid Brown Raysman & Steiner LLP, 319 F. App'x at 678-79 (citation and internal quotation marks omitted).

Thus, Defendants Coelho and PHC Medical cannot compel arbitration under the Executive Employment Agreement, the Employee Severance Agreement, or the Consulting Agreement, since the Mutual Termination Agreement supersedes those prior agreements, and it does not contain an arbitration provision. Therefore, their motion is denied.

### B. Defendant SynGen

Both parties agree that "SynGen is not a signatory to the arbitration agreements at issue." (Mot. 9:11-12; Opp'n 9:20-21 ("[T]here is no agreement to arbitrate between Cesca and SynGen.").) Defendant SynGen argues that even though it is not a signatory to the Executive Employment Agreement, the Employee Severance Agreement, the Consulting Agreement, or any other arbitration agreement with Cesca, Cesca must submit its claims against SynGen to arbitration under an equitable estoppel or agency theory. (Opp'n 9:13-21, 10:26-28, 11:19-23.)

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he

has not agreed so to submit." AT & T Technologies, Inc., 475 U.S. at 648 (citations omitted).

Here, Cesca and SynGen have not agreed to arbitrate. Further, SynGen's arguments, based on an equitable estoppel or agency theory, rely on the existence of an underlying arbitration agreement, which the court has held does not exist. See, e.g., Creative Telecomms., Inc. v. Breeden, 120 F. Supp. 2d 1225, 1240 (D. Haw. 1999) ("Federal courts have consistently afforded agents, employees, and representatives the benefit of *arbitration agreements* entered into by their principals . . . ." (emphasis added)); JSM Tuscany, LLC v. Superior Court, 193 Cal. App. 4th 1222, 1238 (2011) ("For the doctrine [of equitable estoppel] to apply, the claims plaintiff asserts against the nonsignatory must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of *the agreement containing the arbitration clause*." (emphasis added) (citation and internal quotation marks omitted)).

Therefore, SynGen's motion is denied.

### III. CONCLUSION

For the stated reasons, Defendants' motion to compel arbitration is DENIED.

Dated: October 7, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

9