1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                          EASTERN DISTRICT OF CALIFORNIA
10
11    CESCA THERAPEUTICS INC.,                No.  2:14-cv-2085-TLN-KJN
12              Plaintiff,
13        v.                                  **ORDER DENYING DEFENDANTS'**
                                              **MOTION TO STAY PROCEEDINGS**
14    SYNGEN INC., et al.                     **PENDING APPEAL**
15              Defendants.
16
17          This matter is before the Court pursuant to Defendants SynGen Inc., Philip Coelho and

18    PHC Medical Inc. (collectively "Defendants") Motion to Stay Proceedings Pending Appeal.

19    (ECF No. 74.)  Plaintiff Cesca Therapeutics Inc. ("Cesca" or "Plaintiff") opposes Defendants'

20    motion.  (ECF No. 75.)  Defendants filed a reply.  (ECF No. 78.)  The Court has carefully

21    considered the arguments raised by both parties.  For the reasons set forth below, Defendants'

22    Motion to Stay Pending Appeal (ECF No. 74) is hereby DENIED.

23          **I.    BACKGROUND AND PROCEDURAL HISTORY**

24          This action arises from Defendants' alleged misappropriation of Cesca trade secrets.

25    Cesca is a company that designs, develops, and commercializes medical products.  (Compl., ECF

26    No. 2 ¶ 15.)  Cesca is the surviving entity of a 2014 merger between ThermoGenesis Corp.

27    ("ThermoGenesis") and TotiPotentRX Corporation.  (ECF No. 2 ¶ 3.)  Defendant Philip Coelho

28    ("Coelho") is a founder and former Chief Executive Officer of Cesca.  (ECF No. 2 ¶ 18.)  As a

                                                 1

1 former employee, Mr. Coelho designed and invented new products and technology for Cesca.

2 (ECF No. 2 ¶ 18.)

3          In 2007, Mr. Coelho and ThermoGenesis entered into an Executive Employment

4 Agreement which contained an arbitration provision.  (ECF No. 2 ¶ 20; Ex. 1, ECF No. 11 § 11.)

5 In 2008, Thermogenesis and Mr. Coelho terminated his employment, and the parties entered into

6 an Employment Severance Agreement which contained an arbitration provision.  (ECF No. 2 ¶

7 21; Ex. 2, ECF No. 11 § 14.5.)  That year, ThermoGenesis and Defendant PHC Medical ("PHC"),

8 an entity of which Mr. Coelho was President, entered into a Consulting Agreement.  (ECF No. 2 ¶

9 22.)  The Consulting Agreement included an arbitration provision and a Proprietary Information

10 and Confidentiality Agreement.  (Ex. 3, ECF No. 11 § 13, 19.)  The Proprietary Information and

11 Confidentiality Agreement contained a "Governing Law" section, which states in pertinent part:

12 "Any legal action or proceeding relating to this Agreement shall be instituted in a state or federal

13 court in Sacramento County, California."  (Ex. A in Ex. 3, ECF No. 11 § 5.1.)

14          In 2009, ThermoGenesis, Mr. Coelho, and PHC Medical entered into a Mutual

15 Termination Agreement ("MTA") which terminated the Executive Employment Agreement,

16 Employment Severance Agreement, and Consulting Agreement, but not the Proprietary

17 Information and Confidentiality Agreement.  (ECF No. 2 ¶ 23.)  The Mutual Termination

18 Agreement's Governing Law section states: "Any legal action or proceeding relating to this

19 Agreement shall be instituted in a state or federal court in Sacramento County, California."  (Ex.

20 4, ECF No. 11 § 9.)  After his employment with Cesca, Mr. Coelho formed SynGen Inc.  (ECF

21 No. 2 ¶ 43.)

22          Cesca filed their complaint alleging *inter alia* that Mr. Coelho and PHC breached their

23 obligations to Cesca by using trade secrets to develop SynGen products.  (ECF No. 2 ¶ 43–50.)

24 Defendants moved to compel arbitration (ECF No. 41), and Judge Garland E. Burrell, Jr.[1] denied

25 Defendants' motion.  (ECF No. 46.)  Pursuant to 9 U.S.C. § 16(a)(1), Defendants timely filed an

26 interlocutory appeal to the Ninth Circuit, which is still pending.  (Not. of Appeal, ECF No. 48.)

27

28
---
[1]        On January 8, 2016, due to the senior status of Judge Burrell, this action was reassigned to this Court for all further proceedings.

1    Defendants now move to stay all proceedings pending the Ninth Circuit appeal.

2         **II.    LEGAL STANDARD**

3         The Federal Arbitration Act grants a party the right to file an interlocutory appeal from the

4    denial of a motion to compel arbitration.  9 U.S.C. § 16(a); *Ontiveros v. Zamora*, No. 2:08-CV-

5    0567-LKK, 2013 WL 1785891, at *1 (E.D. Cal. Apr. 25, 2013).  A stay is "not a matter of right"

6    but "an exercise of judicial discretion and the propriety of its issue is dependent on the

7    circumstances of the particular case."  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal

8    quotation marks and citations omitted).  District courts have discretion to stay a case pending an

9    appeal of a denial to compel arbitration.  *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412

10   (9th Cir. 1990).  An appeal from a district court's order denying a motion to compel arbitration

11   does not trigger an automatic stay pending determination of the appeal.  *Id.* at 1411–12.  The

12   Ninth Circuit has reasoned that automatic stays in this context "would allow a defendant to stall a

13   trial simply by bringing a frivolous motion to compel arbitration."  *Id.* at 1412.

14        The moving party has the burden of persuading the court that the circumstances of the

15   case justify a stay.  *DKS, Inc. v. Corp. Bus. Sols., Inc.*, No. 2-15-CV-0132-MCE-DAD, 2015 WL

16   6951281, at *1 (E.D. Cal. Nov. 10, 2015).  Courts consider four factors when determining

17   whether to grant a stay pending appeal of a civil order: (1) whether the stay applicant has made a

18   strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

19   irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the

20   other parties interested in the proceeding; and (4) where the public interest lies.  *Hilton v.*

21   *Braunskill*, 481 U.S. 770, 776 (1987).  The first two factors are the most critical.  *Nken*, 556 U.S.

22   at 434.  In light of *Nken*, the Ninth Circuit clarified its treatment of the first two factors, holding

23   that the movant's "burden with regard to irreparable harm is higher than it is on the likelihood of

24   success prong, as she must show that an irreparable injury is the more probable or likely

25   outcome."  *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011).

26        In weighing these factors, courts apply a "sliding scale" approach whereby the factors are

27   balanced "so that a stronger showing of one ... may offset a weaker showing of another."  *Id.* at

28   964; *see also Morse v Servicemaster Global Holdings, Inc.*, No. 10-CV-0628-SI, 2013 WL

3

123610, at *1–2 (N.D. Cal. Jan. 8, 2013).  Under this sliding scale approach, a moving party who cannot show a strong likelihood of success on the merits may nonetheless be entitled to a stay where she shows that her appeal is a substantial case which "raises serious legal questions, or has a reasonable probability or fair prospect of success."  *Leiva-Perez*, 640 F.3d at 971; *see also Britton*, 916 F.2d at 1412 (noting that a stay pending an appeal from an order declining to compel arbitration may be appropriate where "the court finds that the motion presents a substantial question").  A party satisfying this lower threshold under the first *Nken* factor "is not required to show that it is more likely than not to win on the merits, but must then demonstrate that the balance of hardships under the second and third factors tilts sharply in its favor."  *Morse*, 2013 WL 123610, at *2 (internal citations and modifications omitted); *see also Ward v. Estate of Goossen*, No. 14-CV-03510-TEH, 2014 WL 7273911, at *3 (N.D. Cal. Dec. 22, 2014).

### III.  ANALYSIS

#### A.    Strong Showing of Likelihood to Succeed on the Merits

Defendants argue they have satisfied the first prong by attempting to lessen the first stay factor's standard with one of their own: that "a movant need only demonstrate a 'minimum quantum of likely success' — *i.e.*, that its appeal has a 'reasonable probability or fair prospect' of success."  (ECF No. 74 at 12) (citing *Leiva-Perez*, 640 F.3d at 967–68).  Defendants claim "the standard is satisfied even if the movant has less than a 50% chance of winning its appeal.  (ECF No. 74 at 12) (citing *Leiva-Perez*, 640 F.3d at 967).  Defendants go so far as to claim the question "is merely whether there is some possibility that the Ninth Circuit could reach a conclusion different than the one that this Court reached."  (ECF No. 74 at 13) (citing *Leiva-Perez*, 640 F.3d at 967–68; *Ontiveros*, 2013 WL 1785891, at *3–4).  Plaintiff points out that Defendants "merely recycle the already-rejected arguments" advanced in their unsuccessful motion to compel arbitration.  (ECF No. 75 at 11.)  Specifically, Plaintiff argues that these identical arguments do not show a case for relief on the merits.  (ECF No. 75 at 11.)  Plaintiff further objects to Defendants' "incomplete and misleading" analysis of *Leiva-Perez* and *Ontiveros*.  (ECF No. 75 at 11.)

First, the Court notes that the first prong's standard is "whether the stay applicant has

4

1   made a *strong* showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 434

2   (emphasis added). The Court acknowledges that courts interchangeably use stay terminology

3   across non-arbitration contexts — e.g., writs of certiorari and alien removal. The Court also

4   agrees with Defendants that their burden does not require demonstrating a likelihood of success

5   that is more probable than not — i.e., greater than 50%. However, "in order to justify a stay, a

6   petitioner must show, at a minimum, that she has a substantial case for relief on the merits."

7   *Leiva-Perez*, 640 F.3d at 968.

8          Second, Defendants omitted that the words "reasonable probability" and "fair prospect"

9   were taken from post-*Nken* Supreme Court opinions analyzing the requirement "in the context of

10  a stay pending a petition for writ of certiorari." *Leiva-Perez*, 640 F.3d at 967 ("[T]hat it is

11  *reasonably likely* that four Justices of [the Supreme Court] will vote to grant the petition for writ

12  of certiorari, and that, if they do so vote, there is a *fair prospect* that a majority of the Court will

13  conclude that the decision below was erroneous.") The phrase "reasonable probability" similarly

14  came from another Supreme Court opinion involving stays in the certiorari context. *Id.* (citing

15  *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)). Defendants have not cited language from any

16  Ninth Circuit case interpreting *Nken* in the relevant arbitration context.

17         Third, Defendants' assertion that *Leiva-Perez* holds that "the standard is satisfied even if

18  the movant has less than a 50% chance of winning its appeal" is seriously misleading. The Ninth

19  Circuit did not state this. The court in *Leiva-Perez* merely cited to a Second Circuit decision,

20  *Mohammed v. Reno*, "holding that a stay of removal *may* issue even when the alien's chance of

21  ultimate success is less than 50 percent[.]" *Leiva-Perez*, 640 F.3d at 967 (citing *Mohammed v.*

22  *Reno*, 309 F.3d 95, 102 (2d Cir. 2002)) (emphasis added). Defendants minimize the critical

23  distinction that having a less than 50% chance of success on appeal may not in itself defeat a

24  motion to stay, but having a less than 50% chance of success is *not* a sufficient condition that

25  satisfies the standard. Further, *Mohammed* involves an alien deportation context. Defendants'

26  falsely contend that the first prong only requires "some possibility" that the Ninth Circuit could

27  reach a different conclusion. (ECF No. 74 at 12–13.) *Leiva-Perez* does not stand for this

28  assertion. Defendants ignore *Nken*'s explicit holding that a "mere possibility of relief" does not

5

1  constitute a likelihood of success on the merits. *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir.

2  2012) (citing *Nken*, 556 U.S. at 434).

3      Finally, Defendants attempt to justify their likelihood of success by analogizing their case

4  to *Ontiveros*. (ECF No. 74 at 13.)  In *Ontiveros*, the district judge found a likelihood of success

5  when he considered recent Ninth Circuit decisions at odds with his refusal to compel arbitration.

6  *Ontiveros*, 2013 WL 1785891 at *3–4.  Defendants' reliance on *Ontiveros* is weak.  Those Ninth

7  Circuit cases and *Ontiveros* dealt with *non-waiver* of arbitration rights.  *Ontiveros*, 2013 WL

8  1785891 at *3–4 (citations omitted).  In the instant case, the district judge did not deny

9  Defendants' motion to compel arbitration on a finding that Defendants waived arbitration.

10  Rather, the judge correctly found that Defendants Coelho and PHC explicitly agreed to forego

11  arbitration by entering into the MTA with Plaintiff, which terminated and superseded all previous

12  agreements.  (ECF No. 46 at 6–7.)  Additionally, Plaintiff and Defendant SynGen never agreed to

13  arbitrate.  (ECF No. 46 at 9.)  Defendants have not presented the Court with any recent decisions

14  that have gone against Judge Burrell's well-reasoned holding.  Thus, Defendants only rely on

15  reasoning identical to their unsuccessful motion to compel arbitration.  Courts have found that the

16  lack of new substantive arguments weighs against likelihood of success on the merits.  *Jimenez v.*

17  *Menzies Aviation Inc.*, No. 15-CV-2392-WHO, 2015 WL 5591722, at *2 (N.D. Cal. Sept. 23,

18  2015); *see DBD Credit Funding LLC v. Silicon Lab., Inc.*, No. 16-CV-5111-LHK, 2016 WL

19  6893882, at *4 (N.D. Cal. Nov. 23, 2016)

20      The Court finds that Defendants have not met their burden of making a strong showing of

21  likelihood to succeed on the merits.  Having failed to satisfy the first prong, Defendants could still

22  be entitled to a stay with the Ninth Circuit's "sliding scale" approach.  Defendants now have to

23  show that the second and third stay factors tilt sharply in their favor to stay.  *Morse*, 2013 WL

24  123610, at *2 (citing *Leiva-Perez*, 640 F.3d at 970).

25              B.    Defendants' Irreparable Injury

26      Defendants contend a denial of stay will cause them irreparable financial harm.  (ECF No.

27  74 at 15–16.)  Defendants are concerned that if their appeal succeeds, then litigation resources

28  spent on overbroad court discovery would have been wasted.  (ECF No. 74 at 16.)  Plaintiff

1  argues that Defendants do not satisfy the requisite showing of irreparable harm because

2  Defendants' grievances rest "entirely on the 'time and expense of litigation'." (ECF No. 75 at

3  17.) Specifically, Plaintiff argues that a movant must "show that there is a reason specific to

4  [their] case, as opposed to a reason that would apply equally well to other cases," and California

5  district courts "have repeatedly held that litigation expenses alone do not constitute irreparable

6  harm." (ECF No. 75 at 17.)

7      "While *Nken* did not affect *Abbassi*'s likelihood of success prong, it did overrule that part

8  of *Abbassi* that permitted a stay to issue upon the petitioner 'simply showing some possibility of

9  irreparable injury.'" *Leiva-Perez*, 640 F.3d at 968 (discussing *Nken*'s analysis of *Abbassi*, 143

10  F.3d at 514.) Although *Nken* did not say what ought to replace *Abbassi*'s "possibility" standard,

11  it quoted *Winter* for the proposition that the "'possibility' standard is too lenient." *Id.* (discussing

12  *Nken*'s analysis of *Winter*, 555 U.S. at 22.) The Ninth Circuit reads *Nken*'s reference to *Winter* as

13  indicating that "to obtain a stay of removal, a[] [movant] must demonstrate that irreparable harm

14  is probable if the stay is not granted." *Leiva-Perez*, 640 F.3d at 968. If the movant has not made

15  the threshold showing of irreparable harm, then a stay may not issue regardless of the movant's

16  proof regarding the other stay factors. *Id.* at 965 (citation omitted).

17      In addition to rejecting the "possibility" standard, *Nken* emphasized the individualized

18  nature of the irreparable harm inquiry. *Id.* at 969. In *Nken*'s deportation context, "[a]lthough

19  removal is a serious burden for many aliens, it is not categorically irreparable." *Nken*, 556 U.S. at

20  435. "Instead, a noncitizen must show that there is a reason specific to his or her case, as opposed

21  to a reason that would apply equally well to all aliens and all cases, that removal would inflict

22  irreparable harm[.]" *Leiva-Perez*, 640 F.3d at 969.

23      The Court agrees with Plaintiff, and finds that Defendants failed to meet their threshold

24  showing of individualized and irreparable harm. Defendants' sole argument for irreparable harm

25  is the loss of financial resources and time spent on discovery during the pendency of their appeal.

26  This argument is not convincing, and has been rejected by other California district courts.

27  *Jimenez*, 2015 WL 5591722, at *3; *Morse*, 2013 WL 123610, at *3–4 (finding that the defendants

28  had not demonstrated irreparable injury due to the potential of litigation related expenses which

they sought to avoid through arbitration); *Guifu Li v. A Perfect Franchise, Inc.*, No. 10-CV-1189-LHK, 2011 WL 2293221, at *4–5 (N.D. Cal. June 8, 2011) (same).  If financial burden was an irreparable harm, then every interlocutory appeal of a denial to compel arbitration would automatically be stayed, a finding which is contrary to Ninth Circuit precedent.  *See Britton*, 916 F.2d at 1411–12.

Plaintiff correctly notes that Defendants mistakenly relied on *Ontiveros* because of the unique procedural posture in that case.  (ECF No. 75 at 17.)  The *Ontiveros* court's grant of stay is easily distinguishable because that case was entering the trial stage, the discovery cutoff was the following month, and the Ninth Circuit was unlikely to resolve whether the suit had to proceed individually or as a class action by the trial date.  *Ontiveros*, 2013 WL 1785891, at *4–5 (E.D. Cal. Apr. 25, 2013).  The *Ontiveros* case is further distinguished because "if a class is certified, both the character of the litigation and the potential scale of expenses will change dramatically."  *Id.* at *4.  Here, the instant case does not involve the substantial costs of class action litigation.  More importantly, this case is not yet at the end-stages of litigation, discovery has only just begun, and Defendants' pending Ninth Circuit arbitration appeal is not unlikely to resolve by the trial date.

A recent case from this district has evaluated an early-stage motion to stay similarly grounded on irreparable financial harm.  *DKS, Inc.*, 2015 WL 6951281, at *2.  The district judge in *DKS* held that because the case was in its earliest stages, "the risk of harm to [defendant] if discovery proceeds is low. If the trial date approaches without a decision on the pending appeal, [defendant] is free to file another motion to stay. At this early juncture, however, [defendant] has failed to meet its burden of persuading [the court] that the circumstances of *this* case justify a stay."  *Id.* (emphasis added).  Here, Defendants admit that "this case is still in its nascent stages." (ECF No. 74 at 19.)  Defendants are welcome to file another motion to stay if their trial date similarly approaches without a decision on their pending appeal.

Defendants attempt to justify financial burden as an irreparable harm with the following two cases: *Gray v. Golden Gate Nat. Recreational Area*, No. 3:08-CV-0722-EDL, 2011 WL 6934433, at *3 (N.D. Cal. Dec. 29, 2011), and *Steiner v. Apple Computer, Inc.*, No. 4:07-CV-

1    4486-SBA, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008).  *Gray* involved the grant of class

2    certification, and the risk of substantial class action costs warranted a stay.  *Gray*, 2011 WL

3    693443, at *3.  *Steiner* which was decided before the 2009 *Nken* decision emphasized

4    individualized harm, and both parties there conceded that the defendant *would* suffer irreparable

5    harm absent a stay.  *Steiner*, 2008 WL 1925197, at *4 (emphasis added).

6           The Court finds that Defendants did not meet their threshold showing because they have

7    not demonstrated the requisite individualized irreparable harm they will suffer but for a grant of

8    stay.  For this reason alone, Defendants' motion must be denied, regardless of their proof

9    regarding the other stay factors.  *Leiva-Perez*, 640 F.3d at 965.  The Court, however, briefly

10   addresses the remaining factors.

11                   C.    <u>Substantial Injury to Other Parties</u>

12          Defendants assert that a stay would not cause Plaintiff any injuries because they have

13   "voluntarily agreed to eleven stipulations extending or staying all case deadlines."  (ECF No. 74

14   at 18) (emphasis omitted).  Defendant claims Plaintiff also "never sought any form of preliminary

15   relief from the Court" and delayed bringing suit for several years after the alleged trade secret

16   misappropriation.  (ECF No. 74 at 18–19.)  Plaintiff counters that a stay would cause them

17   substantial and irreparable injury because Defendants benefit from freely marketing and

18   commercializing Plaintiff's trade secrets during the stay period.  (ECF No. 75 at 20.)  Plaintiff

19   claims they cannot commercialize their current intellectual property developments "while the

20   intellectual property rights are in limbo" for fear of patent infringement.  (ECF No. 75 at 20.)  In

21   addition, Plaintiff is concerned that a stay "may cause memories to fade, information to be lost,

22   and potential witnesses to become difficult to reach."  (ECF No. 75 at 20.)  Plaintiff explains that

23   the multiple deadline extension stipulations stemmed from settlement negotiations and

24   Defendants' demand for Plaintiff's original counsel to withdraw due to conflicts of interest.  (ECF

25   No. 75 at 20–21.)

26          "Limited delays and the prejudice to a defendant from the pendency of a lawsuit are

27   realities of the system that have to be accepted, provided the prejudice is not compounded by

28   'unreasonable' delays."  *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citations

1   omitted).  "[T]he delay associated with a stay may affect the availability of witnesses and

2   documents or the quality of testimony."  *United States v. Feathers*, No. 14-CR-0531-LHK, 2017

3   WL 783947, at *5 (N.D. Cal. Mar. 1, 2017) (citation omitted).  "Courts have recognized that 'the

4   risk of lost evidence weighs against granting a stay.'"  *DBD Credit Funding LLC*, 2016 WL

5   6893882, at *13 (citation omitted).

6       The Court does not believe that Plaintiff has unreasonably delayed this litigation to date.

7   Further, the Court finds that a stay will be injurious to Plaintiff's interests in preserving evidence.

8   Accordingly, the Court holds that the third stay factor weighs against a stay.

9                       D.   Public Interest

10      Defendants rightfully highlight the strong public policy support for arbitration and

11  conservation of judicial resources.  (ECF No. 74 at 19.)  Plaintiff is understandably concerned

12  that "[a] stay would deprive Cesca of its day in court for at least a year, and would deny Cesca

13  'the just, speedy, and inexpensive determination' promised by Rule 1 of the Federal Rules of

14  Civil Procedure."  (ECF No. 75 at 22.)  Both parties raise important public policy considerations.

15  The Court, however, does not find the fourth stay factor to be controlling in this matter, for the

16  previous three prongs all strongly weigh against a grant of stay.  Thus, the Court reserves

17  judgment on the sufficiency or weight of these policy arguments.

18      **IV.    CONCLUSION**

19      For the reasons set forth above, the Court hereby DENIES Defendants' motion to stay

20  proceedings pending appeal.  If this case litigates until the point of final pretrial preparations and

21  the Ninth Circuit has yet to issue a ruling, then Defendants may renew their motion for a stay.

22      IT IS SO ORDERED.

23

24  Dated: March 28, 2017

25

26                                              _____

27                                              Troy L. Nunley
                                                United States District Judge

28